## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | |
|---|---|
| RICHARD BURKHALTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:15-CV-81-RLW |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant.[1] | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Richard Burkhalter ("Burkhalter") for disability insurance benefits.

## I.    Background

Burkhalter filed an application for Supplemental Security Income on December 3, 2012. The Social Security Administration ("SSA") denied Burkhalter's application for benefits, and he filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The SSA granted Burkhalter's request and a hearing was held on May 7, 2014. The ALJ issued a written decision on August 9, 2014, upholding the denial of benefits. (Tr. 21-28). Burkhalter filed a timely Request for Review of Hearing Decision with the Appeals Council. The Appeals Council denied Burkhalter's Request for Review on September 17, 2015. (Tr. 1-4). The decision of the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Burkhalter filed this appeal on November 17, 2015. (ECF No. 1). Burkhalter filed a Brief in Support of his Complaint on August 29, 2016. (ECF No. 28). The Commissioner filed a Brief in Support of the Answer on November 28, 2016. (ECF No. 33).

## II.  Decision of the ALJ

The ALJ found that Burkhalter had the following severe impairments: degenerative disc disease of the lumber spine, headaches, frozen right shoulder, Meralgia paresthetica, right rotator cuff tear, and mild scoliosis and spondylosis of the spine. (Tr. 23). The ALJ, however, determined that Burkhalter did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24). The ALJ found that Burkhalter had the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 416.967(b) and SSR 83-10, including the ability to lift and carry up to 10 pounds frequently and 20 pounds occasionally, stand and/or walk up to 6 hours in an 8 hour workday, with the ability to alternate between sitting and standing at least every 30 minutes. The claimant could never climb ladders, ropes or scaffolds or crawl, but could occasionally climb ramps or stairs, balance, stoop, kneel and crouch. He should avoid overhead reaching with the right upper extremity, extreme cold and excessive vibration. (Tr. 24). The ALJ found that Burkhalter was unable to perform past relevant work. (Tr. 26). The ALJ determined that, based on Burkhalter's RFC, jobs exist in significant numbers in the national economy that he could perform. (Tr. 27). Consequently, the ALJ found that Burkhalter was not disabled since December 3, 2012, the date the application was filed. (Tr. 28).

## III.  Administrative Record

The following is a summary of relevant evidence before the ALJ.

## A. Hearing Testimony

Burkhalter's attorney stated that Burkhalter is disabled due to degenerative disc disease, as well as neck and shoulder issues. (Tr. 35-36).

Burkhalter testified on May 7, 2014, as follows:

Burkhalter is 50 years old. (Tr. 37). He is 6 feet and 2 inches, and 200 pounds, and single. (Tr. 37-38). He does not have a driver's license because of child support obligations. (Tr. 38). His girlfriend drove him ninety-five minutes, nonstop, to the hearing. (Tr. 38). He lives in an apartment with his girlfriend and her son, who is twenty-five. (Tr. 38, 39). The apartment has stairs going into it. (Tr. 39). He completed ninth grade, but did not receive his GED. (Tr. 39). He stopped working in 2010 due to lower back problems. (Tr. 39). He had no earnings between 2000 and 2007 because he was working "under the table in California." (Tr. 39). In 1999, Burkhalter worked as a marine mechanic and as a carpenter remodeling homes, a rough framer. (Tr. 40).

Burkhalter thinks he is disabled because he is in a lot of pain and lies flat most of the day. (Tr. 40). He is in so much pain that he cannot concentrate for much of the day, even with pain medication. (Tr. 40). Burkhalter has been treated by Dr. Ryle for lower back problems. He has scoliosis and there is nothing that can be done to treat it, other than stretching. (Tr. 41). Surgery is not an option.

He also has calcification on his spine that is pinching a nerve in his right thigh. (Tr. 42). The right thigh goes numb and Burkhalter has to rub it.

Burkhalter usually sleeps between an hour to two hours at a time at night because he wakes up due to pain. (Tr. 42-43). To get relief from the pain, he has to stretch his back. (Tr. 43). It then takes him another half hour to get back to sleep. He has pain during the day but does

3

not have to do the stretches as often. (Tr. 43). He can do the dishes for five to ten minutes. (Tr. 43). If he cannot complete the job, then he lies down for a while. (Tr. 43-44). He lies down on his back with his knees in the air. (Tr. 44). The more he stands, the more he has to do that stretch. He can only sit for 10 to 15 minutes before he takes a break to stretch his lower back. (Tr. 44-45). He has to sit down and grab his feet and pull to stretch his lower back. (Tr. 45). He has to stretch for 10 minutes before he can sit again. (Tr. 45). Sitting on a recliner does not help. He can lie on a couch as long as he is flat with his knees bent. (Tr. 45). He spends most of his day on his back in bed. He does not do any housework, other than dishes, or yardwork because it is too hard on his back. (Tr. 45-46).

He has difficulty walking but does not use a cane. (Tr. 46). Walking causes him pain in his lower back. He can walk one side of a block before he has to sit down and stretch his back. (Tr. 46).

He does not use a computer or play any computer games. (Tr. 47). He does very little shopping, only for five minutes at a time. (Tr. 47). He does not use any shopping assistant devices at the store. (Tr. 47).

The pain medications help only a "certain percentage." (Tr. 47-48). He does not have many side effects from the medications. (Tr. 48).

He has no formal training in carpentry. (Tr. 48). He never went to a vocational school. (Tr. 48). He has no formal training as a marine mechanic. (Tr. 48). He performed some welding when he was a marine mechanic; his father had taught him how to weld. (Tr. 48). He can not perform his past work as a carpenter or as a mechanic and welder. (Tr. 49).

4

He had an operation on his right shoulder. (Tr. 49). He is right handed. He has eighty percent motion in his right shoulder. (Tr. 49). He cannot reach above his shoulder. (Tr. 50). He receives no treatment for his arm; it is as good as it will get.

On an average day, he lies in bed eight hours a day at least. (Tr. 50). He plays no games and does not read. (Tr. 50-51).

He smokes one pack of cigarettes per day. (Tr. 51). He last used methamphetamines in 1996 and last used alcohol seven years ago. (Tr. 51).

He does not belong to any social or church groups. He only visits his father on a regular basis. (Tr. 51). The last two months he has gone to see his father, who is undergoing radiation therapy treatments, during the day while his brother is at work. (Tr. 52).

Burkhalter is able to care for his personal hygiene needs. (Tr. 52). There are no weather conditions or environments that make his symptoms worse. (Tr. 54).

Vocational expert Jerry Beltramo testified as follows:

The first hypothetical person would be the same age, education and work experience as Burkhalter, who can occasionally lift 20 pounds, frequently lift 10 pounds; can stand or walk for up to six hours and sit for up to six hours. The individual would need to alternate between sitting and standing at least every two hours. The individual could occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl. The individual would need to avoid overhead reaching with the right upper extremity and would need to avoid exposure to extreme cold. (Tr. 54-55).

The first hypothetical person would not be able to perform any of Burkhalter's past relevant work. (Tr. 55). However, some unskilled jobs are available. The individual could

5

perform work as a cashier II position, light work; folding machine operator, light work; power screwdriver operator, light work.

The person in the second hypothetical would have all of the restrictions of the first individual, except this person could never crawl. (Tr. 56). This second hypothetical person could perform all of the same jobs as the first hypothetical person. (Tr. 56).

The third hypothetical would have the same limitations as hypothetical number two but would need to alternate between sitting and standing at least every 30 minutes. (Tr. 56-57). The third hypothetical person could perform the same jobs as previously outlined.

Employers usually allow one unscheduled absence per month. (Tr. 57). Employers usually permit three breaks per day: a 15 minute break in the morning and one in the afternoon and a lunch break of 30-45 minutes. (Tr. 57).

If any of the hypothetical people were unable to sit for more than 15 minutes at a time, unable to sit for more than an hour in a normal eight hour day, unable to stand more than 30 minutes, unable to stand for more than two hours in a normal day, unable to walk more than 15 minutes at a time, and unable to walk more than 1 hour in a given day, then that individual would be unable to perform any competitive work. (Tr. 58).

## B. Medical Evaluations

Burkhalter's relevant medical evaluations are summarized as follows:

On January 19, 2012, Burkhalter saw Dr. Wesley Ryle at ATSU Gutensohn Clinic regarding his back pain. (Tr. 262). He showed no joint swelling or neck pain. Burkhalter was ordered to stop Flexeril, continue Tramadol, start Mobic, and was referred to the pain clinic. (Tr. 262-65). On January 25, 2012, Burkhalter was seen by Dr. Ryle. (Tr. 258-61). Burkhalter reported that Tramadol and Mobic had been minimally helpful but Mobic was not letting him

6

sleep. Burkhalter was told to return in one month and was referred to the pain clinic for evaluation.

On February 24, 2012, Burkhalter was seen by Dr. Ryle for back pain. (Tr. 254-57). Burkhalter reported that the pain clinic had given him an injection, which did not help. Burkhalter reported running out of his narcotic one week ago and wants a new prescription for Vicodin. Burkhalter was given a prescription for hydrocodone-acetaminophen.

On March 9, 2012, Burkhalter was seen at the Gutensohn Clinic for back pain. (Tr. 248-52). Burkhalter reported insomnia, numbness in extremities, back pain, and decreased mobility.

On March 16, 2012, Burkhalter was seen at the Gutensohn Clinic regarding back pain. (Tr. 244-47). Burkhalter reported that the severity level of the pain was a 3. He also reported mild thigh numbness. Somatic dysfunction was improved.

On March 23, 2012, Burkhalter reported at the Gutensohn Clinic. (Tr. 240-43). Burkhalter was out of hydrocodone but had Tramadol. He was prescribed Vicodin and ordered to follow-up in one month.

On March 30, 2012, Burkhalter presented at Gutensohn Clinic with back pain of a level 3. (Tr. 235-39). He also reported the symptoms of his thigh numbness as being mild. He had occasionally numbness on his right thigh after driving for a long time. Burkhalter was to follow up in 2 weeks.

On April 27, 2012, Burkhalter was seen by Dr. Ryle for lumbago and meralgia paresthetica. (Tr. 232-34). Burkhalter was taking hydrocodone before bed to sleep and once in the morning and taking Tramadol as needed. Burkhalter did not see the pain clinic last month as he was advised. Dr. Ryle discussed looking into other solutions such as injections and a surgical

7

evaluation. Dr. Ryle required Burkhalter to attend his pain management consultation before Dr. Ryle would prescribe more medication.

On May 29, 2012, Burkhalter was seen by Dr. Ryle for chronic lumbago. (Tr. 228-31). Burkhalter had been seen at the pain clinic and diagnosed with multiple compressed discs. Burkhalter reported that he was generally satisfied with his pain management. Burkhalter takes up to 6 Tramadol a day and takes hydrocodone twice daily. He cannot lay flat but prefers leaning forward. Hydrocodone, Celebrex, and Cymbalta were prescribed.

On June 12, 2012, Burkhalter was seen by Dr. Steve Kuhns at the Missouri Orthopedic Institute regarding his lower back pain. (Tr. 211-15). Burkhalter rated his pain at a 5/6. Burkhalter had a 5/5 hip flexion, hip extension, abduction of thighs, knee flexion and extension, ADR, APF, EHL and FHL. Burkhalter was diagnosed with multilevel degenerative low back pain with degenerative lumbar spine disk disease. Burkhalter was instructed to increase his exercise and decrease his dependency on opioids.

On June 26, 2012, Burkhalter was seen by Dr. Ryle for a follow up. (Tr. 224-27). Burkhalter reported that Celebrex/Cymbalta made him sleepy but that his back pain was greatly improved. Burkhalter reported seeing a surgeon who stated that Burkhalter's pain would not improve through surgery. Burkhalter was to continue his medications and follow up in 3 months or as needed.

On September 25, 2012, Burkhalter was seen by Dr. Ryle for a follow up. (Tr. 220-23). Burkhalter reported that Cymbalta had started to wear off, but he had only taken about 10 narcotic tablets in the last month. Burkhalter stated that a steroid shot in his shoulder helped the back pain for several weeks. Burkhalter reported new shoulder pain for the last 3 months.

Burkhalter was instructed to continue Cymbalta and Celebrex. Burkhalter should follow up in 6 months or as needed.

On January 14, 2013, Burkhalter's girlfriend, Tracy Johnson, filled out a Function Report, Adult-Third Party. (Tr. 153-60). She stated that Burkhalter let their dogs out, took care of the dogs, helped with chores, prepared sandwiches, and did dishes. Burkhalter also grocery shopped twice a month for an hour.

On February 21, 2013, Burkhalter was seen by Stephen Bergman, D.O. for a disability evaluation. (Tr. 278-79). Dr. Bergman found that Burkhalter suffered from chronic back pain, frozen shoulder, chronic pain in the neck and shoulders, chronic meralgia paresthetica of the right thigh, degenerative arthritis in the low back, chronic tension headaches, and depression. Dr. Bergman found that Burkhalter had some chronic pains related to some degenerative arthroses in the back that probably contributes to the meralgia paresthetica, but that those chronic diseases can be managed with exercise generally and should not be debilitating. Dr. Bergman found that Burkhalter's low employability is likely related to his low education status, as well as his physical complaints.

On April 5, 2013, Burkhalter presented to Dr. Ryle for a medication refill. (Tr. 306-09). Burkhalter stopped taking the Cymbalta and Celebrex because he lost his insurance but continued to take the Tramadol. He reported severe back pain; pain in shoulder was getting worse; and neck pain. Dr. Ryle found that the lumbago was stable and renewed Burkhalter's prescriptions, and ordered Burkhalter to follow up in several months regarding his back.

On April 12, 2013, Burkhalter was seen by Dr. Ryle for a shoulder injection after ROM exercises showed no improvement. (Tr. 302). Dr. Ryle opined that Burkhalter had frozen

shoulder. Dr. Ryle ordered 1-2 weeks of ROM exercises. Dr. Ryle would refer Burkhalter for an MRI and to an orthopedist if his symptoms did not improve.

On April 26, 2013, Burkhalter presented to Dr. Ryle for a follow-up regarding his continued shoulder pain. (Tr. 298-301). Burkhalter reported doing his ROM exercises but no relief in his shoulder and his back pain had been getting worse. Dr. Ryle referred Burkhalter to an orthopedist and for an MRI.

On April 29, 2013, Burkhalter asked Dr. Ryle to fill out his disability paperwork. (Tr. 285-97). Dr. Ryle opined that Burkhalter could continuously lift and carry 10 pounds and occasionally lift 20; sit for fifteen minutes and stand for 30; walk for fifteen minutes; could not sit for longer than one hour in an eight-hour day, could not stand for more than two hours, and could not walk for more than one hour. Dr. Kyle said that Burkhalter had severe low back pain that required frequent position changes and lying down. Dr. Kyle said Burkhalter had to lie down for 8 hours a day, excluding sleep. Burkhalter could never reach overhead and in all directions, never push/pull, and could occasionally handle, finger and feel with the right hand due to severe right shoulder pain and limited range of motion. Burkhalter could occasionally climb stairs and ramps, stoop, kneel, and crouch, and never climb ladders or scaffolds or crawl. Dr. Ryle indicated that vibrations and bouncing significantly exacerbated Burkhalter's back pain.

On May 10, 2013, Burkhalter was seen by Dr. Ryle for and evaluation prior to rotator cuff surgery. (Tr. 291-94). Burkhalter was advised he was not at significant risk for complications from surgery.

On May 16, 2013, Burkhalter had surgery on his rotator cuff by Kevin M. Marberry, M.D. (Tr. 317-19).

10

On May 24, 2013, Burkhalter was seen for follow up by Dr. Ryle. (Tr. 425-26). Burkhalter reported that his pain was improving and at a 5/10.

On June 3, 2013, Burkhalter was seen by Dr. Marberry regarding his shoulder pain. (Tr. 427-29). Burkhalter reported that his pain was a 1/10 and occasional. He was taking over the counter medication for pain and had a "good response." His work status was light work and activity. He was instructed to follow his exercise program and follow up in 2 weeks.

On June 17, 2013, Burkhalter was seen for a follow up appointment at the Gutensohn Clinic regarding his shoulder pain. (Tr. 430-31). Burkhalter stated that his shoulder did not hurt after doing his home exercises. He only had pain with certain movements. He was instructed to follow up in 21 days.

On July 8, 2013, Burkhalter was seen for a follow up appointment at the Gutensohn Clinic regarding his shoulder pain. (Tr. 432-33). Burkhalter reported his pain was a 0/10. He was taking prescription pain medication for pain as prescribed with a fair response. He stated he was performing home exercises and using pain medication for back pain. He was instructed to follow up in a month.

On August 5, 2013, Burkhalter was seen for a follow up appointment at the Gutensohn Clinic regarding his shoulder pain. (Tr. 434-35). Burkhalter reported he had pain in his shoulder only occasionally and regained almost full motion with his right shoulder. His pain score was a 0/10. He was instructed to return for a follow up as needed.

On November 13, 2013, Burkhalter was seen by Dr. Ryle regarding his back pain. (Tr. 437-40). Burkhalter asked for more pain medication.

From December 4 to December 10, 2013, Burkhalter was hospitalized at the Northeast Regional Medical Center for chest pain. (Tr. 310-424). Range of motion was 30 in rotation

11

bilaterally, side bending was about 20 bilaterally, extension was about 10 and flexion was about 45. All range of motion, although limited, was mostly due to muscle spasms. Paraspinal muscle spasms were present in the cervical region, thoracic and lumbar regions. OA was rotated right, sidebent left, and flexed. Cervicals showed C3 and C4 rotated and sidebent right and extended. T4 through T8 were rotated left, sidebent right and neutral. Slight tender points along the lateral T4 or T5 were seen on the left. Lumbars were with paraspinal muscle spasms throughout. Based on the physical exam, OMT was used to treat somatic dysfunction.

On December 11, 2013, Burkhalter was seen by Dr. Ryle for a follow up after his hospitalization for heart problems. (Tr. 444-47).

On January 6, 2014, Burkhalter presented to Dr. Ryle for refills of his medication. (Tr. 448-51). He reported his pain was stable. He was taking Vicodin twice a day and tramadol the rest of the time. He was diagnosed with obstructive chronic bronchitis, without exacerbation.

On March 10, 2014, Burkhalter was seen by Dr. Ryle for back and neck pain. (Tr. 452-55). He was diagnosed with chronic back and neck pain.

## IV. Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as

12

"any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[2] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

---

[2] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

[t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions,

14

thus it embodies a zone of choice within which the Secretary may decide to grant
or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for

the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson*

*v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed

because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at

1022.

## V. Discussion

The ALJ afforded Dr. Ryle's medical opinion regarding Burkhalter's work-related

limitations little weight. The ALJ stated:

[T]he undersigned gives little weight to the opinions and Medical Source
Statement of Wesley Ryle, M.D., because they are conclusory and totally
inconsistent with the claimant's treatment records, which indicate improvement
with medications; the objective evidence of record; the opinions of consultative
physician; and the overall record. Moreover, the opinions appear to be based on
the claimant's subjective complaints mainly, rather than his own objective
evaluation.

(Tr. 26).

Burkhalter argues that the ALJ failed to properly consider opinion evidence, particularly

Dr. Ryle's medical opinion. (ECF No. 28 at 9-15). Dr. Ryle believed that Burkhalter would be

limited to sedentary work with very limited sitting and standing, which would make him unable

to perform any competitive employment. Burkhalter claimed that Dr. Ryle's treatment notes

support such extensive restrictions and that the ALJ improperly afforded Dr. Ryle's opinion little

weight.

The Court holds that that the ALJ properly evaluated the medical opinions.

First, the ALJ appropriately considered Burkhalter's minimal pursuit of treatment for his

allegedly severe headaches. (Tr. 25). Despite alleging that he suffers three to four severe

15

headaches per week, Burkhalter received little treatment for his headaches. (Tr. 25, 437, 441). In fact, Burkhalter did not allege that headaches limited his ability to work in his benefits application in December 2012. (Tr. 146). Thereafter, Burkhalter did not report his headaches to his treating physician until April 2013. (Tr. 303). Nothing in the record reflects that Dr. Ryle did any testing related to Burkhalter's headaches or provides any treatment for his headaches in April 2013. (Tr. 302-05). Burkhalter did not do any treatment for his headaches until November 2013, nearly a year after he applied for disability benefits. (Tr. 437, 441). Burkhalter had denied experiencing headaches on numerous occasions prior to his benefits application. (Tr. 208, 221, 225, 229, 255, 259). The ALJ reasonably concluded that Burkhalter would have sought more regular treatment if his pain were as severe as alleged.

Likewise, the ALJ properly determined that Burkhalter's back pain was not as severe as alleged based upon the clinical observations and testing in the record. (Tr. 25); *see McCoy v. Astrue*, 648 F.3d 605, 617 (8th Cir. 2011) ("Finally, the ALJ noted that Dr. Puente's evaluation appeared to be based, at least in part, on McCoy's self-reported symptoms and, thus, insofar as those reported symptoms were found to be less than credible, Dr. Puente's report was rendered less credible."). *See* 20 C.F.R. §929(c)(2) ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work or … your functioning.."). Despite Burkhalter's complaints, an MRI scan revealed only minimal disc bulging in the lumbar spine. (Tr. 25, 213). X-rays of Burkhalter's thoracic spine found only mild spondylosis and mild scoliosis. (Tr. 25,

16

466-67). Dr. Bergman opined after examining Burkhalter that his chronic back pain could be managed with exercise and should not be debilitating. (Tr. 25, 279). Likewise, Dr. Gallizzi recommended that stopping smoking and exercising would best help Burkhalter's pain. (Tr. 213). Dr. Ryle observed in January 2014 and March 2014 that Burkhalter did not have a gait disturbance and had no joint swelling or muscle weakness. (Tr. 449, 453). Dr. Bergman likewise noted that Burkhalter had normal strength in his upper and lower extremities and walked with a non-antalgic and symmetrical gait. (Tr. 279, 283-84). These physicians' observations contradicted Burkhalter's allegations of extreme mobility limitations caused by his back pain. Further, the record includes several instances where Burkhalter's back pain improved with pain medication and injections, which indicates that Burkhalter's pain was not as debilitating as alleged. (Tr. 25, 220, 224, 226). The ALJ reasonably concluded that these mild medical findings did not support Burkhalter's allegations of disabling back pain. (Tr. 25). *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (quoting *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006) (the Court defers to the ALJ's determination regarding the petitioner's credibility "provided that this determination is supported by 'good reasons and substantial evidence.'") .

The ALJ also noted that Burkhalter's back and right shoulder pain improved with treatment and, accordingly, were not as limiting as he alleged. (Tr. 25, 220, 224, 226, 430, 434). As previously discussed, Burkhalter's back pain improved with medication and injections. (Tr. 25, 220, 224, 226). Burkhalter reported that his right shoulder pain had nearly resolved after a May 2013 rotator cuff surgery. (Tr. 25, 427, 430, 434). Even at the hearing, Burkhalter testified that he had "very little" problems with his right shoulder other than being unable to reach with his right arm above his shoulder. (Tr. 25, 49-50). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wildman v. Astrue,* 596 F.3d 959,

17

965 (8th Cir. 2010) (quoting *Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir.2004)). Thus, Burkhalter's improved pain symptoms do not support a finding of disability. *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015).

In addition, the ALJ considered that Burkhalter did not heed his doctor's advice to quit smoking to improve his health and decrease his pain. (Tr. 26, 51, 213, 264-65, 447). The ALJ noted that smoking cigarettes is known to exacerbate musculoskeletal impairments and that tobacco use made it more difficult for Burkhalter to recondition his body. (Tr. 26, 213). Nevertheless Burkhalter continued to smoke one pack of cigarettes per day. (Tr. 26, 51). *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (citing *Gowell v. Apfel,* 242 F.3d 793, 797 (8th Cir. 2001) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

The ALJ addressed Burkhalter's activities of daily living and rightfully determined that they were inconsistent with his claims of disabling pain. (Tr. 26, 38, 44-46, 52, 153, 156). Although Burkhalter alleged significant limitations in daily living during the hearing, but he also noted that he does not require a cane or other assistive device to walk. (Tr. 26, 46-47). He rode for 95 miles nonstop to the hearing, despite claiming that he could only sit for 10 to 15 minutes at a time. (Tr. 26, 38). He was able to feed his dogs, help with housework, prepare simple meals, wash dishes, and shop for groceries. (Tr. 26, 153-56). He needed no assistance with personal care or eating. (Tr. 154). The ALJ reasonably concluded that Burkhalter's extensive regular activities and abilities demonstrated that he was physically capable of more than he alleged in his claim for benefits. (Tr. 26). *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (quoting *Johnson v. Apfel,* 240 F.3d 1145, 1148–49 (8th Cir.2001)("'[a]cts which are

18

inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility'").

The ALJ properly weighed Burkhalter's poor work history. (Tr. 25). *See Buckner v. Astrue*, 646 F.3d 549, 556-58 (8th Cir. 2011) (Buckner's sporadic work history prior to his alleged disability date indicated that he was not strongly motivated to engage in productive activity, which weighed against his credibility). Burkhalter did not work many years, including from 1992 through 1997, from 2000 through 2007, and from 2011 through 2012. (Tr. 138-39). Since 1991, Burkhalter has only earned $37,390.93 in wages. (*Id.*). This limited employment and underemployment suggests poor motivation and calls "his disability claim into question." *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

Medical opinion evidence also supports the ALJ's decision. The ALJ granted significant weight to Dr. Bergman's opinions because they were consistent with Burkhalter's opinions because they were consistent with Burkhalter's physician's treatment notes that showed improvement with shoulder surgery and medications. (Tr. 26, 279). Dr. Bergman's opinions were consistent with the imaging records that showed only mild abnormalities in Burkhalter's spine, Dr. Ryle's observations that Burkhalter walked without a gait disturbance, and Burkhalter's pain improvement with medication and injections. Dr. Bergman's opinion was also consistent with Dr. Gallizzi's opinion that Burkhalter needed to stop smoking and exercise more to reduce his pain. (Tr. 213). Based upon its consistency with the medical records, the ALJ appropriately gave Dr. Bergman's opinion significant weight. (Tr. 26, 279).

In contrast, the ALJ appropriately gave Dr. Ryle's opinions little weight. (Tr. 26, 285-90). The ALJ noted that Dr. Ryle's opinions were conclusory and "totally inconsistent with [Burkhalter's] treatment records, which indicate improvement with medications." (Tr. 26).

Contrary to his opinion that Burkhalter could walk for no more than 15 minutes at a time and for no more than 1 hour during an 8-hour workday, Dr. Ryle noted upon examination that Burkhalter walked without a gait disturbance, had no joint swelling or muscle weakness, and had normal deep tendon reflexes. (Tr. 226, 440, 449, 454-54). Also, in contrast Dr. Ryle's findings that Burkhalter had significant mobility restrictions, the medical imaging revealed only mild degenerative changes in Burkhalter's spine and Dr. Ryle noted that Burkhalter's symptoms improved with medication and injections. Dr. Ryle's opinions were inconsistent with medical evidence from other sources, such as Dr. Bergman's examination findings that Burkhalter walked with a non-antalgic and symmetrical gait. (Tr. 26, 278-83). The ALJ also noted that Dr. Ryle's opinions appeared to be based upon Burkhalter's subjective complaints, rather than medical findings and tests. (Tr. 26, 285-90). *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'"). Dr. Ryle's opinion that Burkhalter needed to lie flat for eight hours per day mirrors Burkhalter's allegation in his pursuit of benefits. (Tr. 50, 286). The record also indicates that Dr. Ryle filled out the functional capacity assessment at the same time he filled out Burkhalter's disability questionnaire. As a result, the ALJ properly gave Dr. Ryle's assessment little weight.

The Court holds that the ALJ properly crafted an RFC after a review of all of the medical evidence. Burkhalter asserts that the RFC is improper because it was not based upon any single medical opinion. (ECF No. 28 at 14). However, courts have held that the ALJ's decision does not need to mirror a single particular medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011) ("In the absence of

medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings."). The ALJ's finding is supported by substantial evidence, such as the benign medical imaging and clinical observations in the record, Burkhalter's significant daily activities, his poor work history, and Bergman's examination findings. Accordingly, the Court holds that there was substantial evidence to support the RFC developed by the ALJ.

Finally, the Court finds that substantial evidence supports the decision of the ALJ and the hypothetical question posed by the ALJ. Burkhalter argued that the ALJ's hypothetical question to the vocational expert did not "relate with precision" to his impairments and limitations. (ECF No. 28 at 14). The Court has validated the RFC developed by the ALJ, and the hypothetical questions included only those limitations deemed credible. Thus, the vocational expert's response to the hypothetical questions provides substantial evidence for the ALJ's finding that Burkhalter could perform work existing in significant numbers.

The Court holds that the ALJ properly included all supported limitations in Burkhalter's RFC and the vocational expert testified that such an individual could perform work existing in significant numbers in the national economy. As such, the ALJ properly concluded that Burkhalter was capable of other work and, thus, not disabled.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 28th day of February, 2017.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE